IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

CHARLES WILKERSON,        )
       )
       Plaintiff,        )
       )
vs.        )        Case No. 4:16-cv-998-TMP
       )
NANCY A. BERRYHILL, Acting        )
Commissioner of Social Security,        )
       )
       Defendant.        )
       )

## MEMORANDUM OPINION

## I.    Introduction

The plaintiff, Charles Wilkerson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner")[1] denying his application for disability and Disability Insurance Benefits ("DIB"). Mr. Wilkerson timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the jurisdiction of the undersigned

---

[1] Counsel for the Commissioner pointed out that Nancy A. Berryhill is now the Acting Commissioner of Social Security. The Clerk is DIRECTED to change the style of the case accordingly.

magistrate judge pursuant to 28 U.S.C. § 626(c).   Accordingly, the court enters this Memorandum Opinion.

Mr. Wilkerson was 50 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has an eighth-grade education.[2]   (Tr. at 178, 232).   His past work experiences include work as a truck driver, upholsterer, forklift operator, and floor sander.   (Tr. at 204-05).   Mr. Wilkerson claims that he became disabled on July 12, 2012, due to degenerative disc disease, diabetes, and lower back pain. (Tr. at 350).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.   *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).   The first step requires a determination of whether the claimant is "doing substantial gainful activity."   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   If he is, the claimant is not disabled and the evaluation stops.   *Id*.   If he is not, the

---

[2]   The ALJ reported that Mr. Wilkerson had a tenth-grade education, but at the hearing Mr. Wilkerson testified that he finished "roughly the eighth grade."   (Tr. at 178).   The claimant's application for disability benefits indicates that he completed the tenth grade.   (Tr. at 351).   Both levels of education qualify as "limited" under the governing regulations, and the plaintiff has not pointed to the ALJ's assessment of his education as reversible error.   20 C.F.R. § 404.1564(b)(3) (defining limited education as generally applying to a seventh grade through eleventh grade level of formal education).

Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he will be found disabled without further consideration. *Id.* If he does not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove his inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Wilkerson has not been under a disability within the meaning of the Social Security Act from the July 12, 2012, date of onset through the date of his decision on July 11, 2014. (Tr. at 238). He determined that Mr. Wilkerson has not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. at 232). According to the ALJ, Mr. Wilkerson's degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, chronic headaches, and diabetes

mellitus (Type II) may be considered "severe" based on the requirements set forth in the regulations. (Tr. at 232-34). The ALJ further determined that Mr. Wilkerson has non-severe impairments of adjustment disorder with anxiety and depression and degenerative joint disease of the right knee. He found that none of the impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 234). In addition, the ALJ did not find Mr. Wilkerson's allegations of pain and the limitations caused by his impairments to be entirely credible. (Tr. at 235). He determined that the plaintiff has the residual functional capacity to perform the full range of light work. (Tr. at 234).

According to the ALJ, Mr. Wilkerson is unable to perform any of his past relevant work, he was a "younger individual" at the date of alleged onset, he has a limited education, and he is able to communicate in English. (Tr. at 236-37). The ALJ determined that "transferability of skills is not material to the determination of disability" in this case. (Tr. at 237). The ALJ found that there are a significant number of jobs in the national economy that Mr. Wilkerson is capable of performing. (Tr. at 237). The ALJ concluded his findings by stating that Mr. Wilkerson is "not disabled" under the Social Security Act. (Tr. at 238).

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.   The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.   *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.   *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"   *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.   *Miles*, 84 F.3d at 1400.   No

decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.    Discussion

Mr. Wilkerson alleges that the ALJ's decision should be reversed and remanded because, he asserts, of the following: (1) the ALJ failed to give proper weight to the opinions of treating physician Dr. Poczatek; (2) the ALJ failed to give proper weight to the opinion of consulting physician Dr. Estock; (3) the ALJ improperly evaluated the plaintiff's credibility without retroactively employing Ruling 16-3p; (4) the ALJ's finding that the claimant had the RFC to perform light work was not based on substantial evidence; (5) the ALJ failed to consider the claimant's tremors/spasticity as a severe impairment; (6) the Appeals Council improperly failed to review medical records submitted after the ALJ's decision solely based on the date of the records, without considering whether they were chronologically relevant to the ALJ's determination; and (7) the denial, when

considering the evidence presented to the Appeals Council, was not supported by substantial evidence. (Doc. 14). The Commissioner has responded by addressing these claims in five categories: (1) the Appeals Council's review of the evidence; (2) the ALJ's treatment of treating and consultative physician opinions; (3) the ALJ's consideration of the plaintiff's subjective complaints as not entirely credible; (4) the ALJ's finding as to the plaintiff's RFC; and (5) the ALJ's evaluation of the severity of plaintiff's tremors/spasticity. (Doc. 15). The court addresses the claims in two broad categories of the ALJ's decision and the Appeals Council's findings, analyzing the plaintiff's more specific allegations within the discussions of each category.

## A. The ALJ's Determinations

### 1. Treating Physician and Medical Source Assessments

Under prevailing law, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how

consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). "Good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) . . . was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) citing *Lewis*, 125 F.3d at 1440; *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner;" thus the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court instead looks to the doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. *See also* 20 C.F.R. § 404.1527(d)(1)("A statement by a medical source that you are 'disabled'

or 'unable to work' does not mean that we will determine that you are disabled."). Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, because it is the ALJ who bears the responsibility of assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

The claimant asserts that the Commissioner failed to give proper weight to the opinions of Dr. Poczatek, a treating physician, and Dr. Estock, a non-examining medical consultant. The opinions are examined in turn.

### a. The Weight Given to Dr. Poczatek's Opinion

The plaintiff argues that the ALJ failed to give proper weight to one statement made by Dr. Poczatek, a treating physician, when he was deposed. Dr. Poczatek stated that "the spasticity would concern me enough to where I would feel he might be not safe to work." (Tr. at 765). The statement was made in response to the question of whether the doctor had any "present intent" or "present plans" to restrict Mr. Wilkerson from working. (Tr. at 764). The ALJ stated that he gave "little weight" to the deposition because the doctor had "not placed a restriction on the claimant's ability to work," and because the doctor's testimony was "equivocal at best and did not define the impact of the claimant's alleged pain." (Tr. at 236).

The record makes clear that neither Dr. Poczatek nor any other medical professional has ever opined that Mr. Wilkerson was unable to work. The statement by the treating doctor was in reference solely to the tremors that Mr. Wilkerson complained of. Those tremors had been observed by doctors, but there had never been any diagnosis of the cause, and no treatment had ever been recommended. In the course of treating Mr. Wilkerson, Dr. Poczatek never imposed any limitation on his ability to work as a result of the tremors. Moreover, two weeks after the alleged onset date, another treating physician, Dr. Kirschberg, stated that, based upon the plaintiff's back pain, there was "no reason why [the plaintiff] can now not return to work." (Tr. at 519). The ALJ articulated reasons for giving less than controlling weight to the single statement made in deposition by Dr. Poczatek. In addition, the ALJ noted that the statement was inconsistent with the doctor's own records and was not bolstered by the evidence. For example, in examinations of the plaintiff in April and May 2013, Dr. Poczatek found "irritation of the L5 nerve root on the left and to a lesser extent the C6 nerve root on the left," yet recommended that plaintiff "increase activity" while avoiding activities that aggravate the plaintiff's back and neck problems. There is no indication in his records that he found the plaintiff

unable to work. Accordingly, the ALJ had adequate reasons for giving the deposition testimony of Dr. Poczatek "little weight."

### b. The Weight Given to Dr. Estock's Opinion

The plaintiff further argues that the ALJ failed to accord proper weight to the opinion of Dr. Robert Estock, a non-examining consultative physician. Dr. Estock reported that Mr. Wilkerson had "moderate" limitations in a few categories of his mental functioning, but ultimately determined that he was "capable of understanding, remembering and carrying out simple instructions over an 8 [hour work day] with routine breaks," "can concentrate for 2 [hour] periods," and should have only "casual and nonconfrontational" contact with co-workers, supervisors and the general public. (Tr. at 224). All of the cases relied upon by the plaintiff to support his claim that the ALJ's opinion is due to be reversed are cases in which the ALJ "ignored" the opinion of a consulting physician. (Doc. 14, pp. 36-42). In this case, the ALJ explicitly noted that he "considered and [gave] little weight to the January 2013 opinion of Robert Estock, M.D., a non-examining doctor who reported that the claimant had moderate mental limitations." (Tr. at 236). The ALJ specifically stated that the limitations reported by Dr. Estock were "inconsistent with the weight of the evidence, including the claimant's more recent treatment records

and his hearing level testimony." (Tr. at 236). Clearly, the treating physician rule does not apply to Dr. Estock's opinions. The ALJ explicitly considered the opinion of this non-treating physician and gave it little weight based upon the other medical evidence in the record and the plaintiff's testimony at the administrative hearing.[3]

In sum, the ALJ did not improperly weigh the medical evidence put before him, and did not substitute his own opinion for any medical opinions of any treating or consulting medical professionals. The ALJ explained the basis for his weighing of the medical testimony. Accordingly, the motion to remand is due to be denied.

## 2. The ALJ's Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ erred in finding his subjective complaints "not entirely" credible because the ALJ failed to retroactively apply SSR 16-3p, which became effective March 28, 2016, almost two years after the ALJ's hearing. The ALJ applied SSR 97-7p, which was in effect at the time of the claimant's adjudication by the ALJ, but which was superseded by SSR 16-3p. The new regulation removes the term "credibility" from the policy, and clarifies that

---

[3] Although Mr. Wilkerson testified that he saw a psychiatrist on one occasion for depression, he also testified that, after the date of the onset, he ran an upholstery business with his son, visited with friends who were restoring old cars, and was taking no medication for depression. This testimony seems inconsistent with the opinions of Dr. Estock that the plaintiff suffered from "moderate" limitations in his ability to follow schedule, work with others, and interact with the public.

"subjective symptom evaluation is not an examination of an individual's character."
SSR 16-3p, 2016 WL 1119029 at *1.

Since this matter was briefed, the Commissioner has filed a notice of supplemental authority, demonstrating that the Eleventh Circuit Court of Appeals has stated, in a published opinion, that SSR 16-3p does not apply retroactively. (Doc. 20). Although the Commissioner cited to *Hargress v. Social Security Admin., Comm'r*, No. 17-11683, 2017 WL 5077522 (11th Cir. Nov. 6, 2017), which was recently vacated and replaced by a new opinion, *Hargress v. Social Security Admin., Comm'r*, No. 17-11683, 2018 WL 1061567 (11th Cir. Feb. 27, 2018), the court of appeals retained its holding, in a case brought by the same counsel as plaintiff's counsel at bar, that SSR 16-3p do not apply retroactively, specifically holding that the rule "applies only prospectively and does not provide a basis for remand." 2018 WL 1061567 at *5. The court further noted that even if SSR 16-3p were applied retroactively to the ALJ's decision, remand would not be warranted because the ALJ "did not assess [the plaintiff's] overall character or truthfulness, but rather ... assessed [the plaintiff's] subjective complaints of disabling pain and fatigue and

concluded that they were not consistent with the other evidence in the record." *Id.* at *5 n. 3.[4]

In this case, the argument relating to SSR 16-3p is unavailing both because there is controlling authority holding that the rule is not applied retroactively and because, even if it were, the ALJ did not examine Mr. Wilkerson's overall character: he merely examined the descriptions of the plaintiff's activities, his own testimony regarding his impairments,[5] and the entire record regarding his medical treatment. As a result, the ALJ found that the evidence was not consistent with the plaintiff's allegations regarding disability. The ALJ's assessment in this case is similar to the ALJ's assessment that was examined in *Hargress*. In this case, the ALJ properly

---

[4] At the time this matter was briefed, only the Seventh Circuit Court of Appeals had applied SSR 16-3p retroactively. *Cole v. Colvin*, 2016 WL 3997246 (7th Cir. July 26, 2016). However, courts within this district have consistently rejected the concept that the newly-promulgated rule is applied retroactively. Judge Virginia Hopkins' decision in *Ring v. Berryhill*, 2017 WL 992174 (N.D. Ala. March 15, 2017), is on appeal at the Eleventh Circuit. Also on appeal is a case in which Judge L. Scott Coogler determined that, given the Supreme Court's determination that retroactivity is not favored, and in the "absence of any binding precedent directing that SSR16-3p is to apply retroactively," the rule would not be given retroactive application. *Wood v. Berryhill*, 2017 WL 1196951 (N.D. Ala. Mar. 31, 2017); *see also Naler v. Berryhill*, 2017 WL 22774733, at *5 (N.D. Ala. June 27, 2017).

[5] The ALJ noted that the plaintiff had executed a worker's compensation settlement agreement in which he stated that he had a 0% impairment rating. The ALJ further noted that the plaintiff testified that he had built a workshop after his onset date in order to do upholstery work. The ALJ's reliance upon those statements, which clearly concerned the " intensity, persistence, and limiting effects" of the plaintiff's symptoms, was clearly within the ALJ's adjudicative power, and is not similar to the case law cited by the plaintiff that limits an ALJ's authority to consider statements made about a subject that is separate from the subject of his ability to work.

assessed the limitations and symptoms described by Mr. Wilkerson, and determined the outcome in accordance with applicable law, even if that were to include the retroactive application of SSR 16-3p. Accordingly, the motion to remand is due to be denied as to this ground.

### 3.   The ALJ's Assessment of the Residual Functional Capacity

The plaintiff further asserts that the residual functional capacity assessment must be "of a treating or examining physician." (Doc. 14, p. 52). The plaintiff's argument ignores the well-settled law that the responsibility for assessing the RFC of a claimant is a matter reserved to the ALJ. Under the regulations governing Social Security benefits, the RFC is not a medical assessment; rather, it is "the most [the plaintiff] can do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC is based upon "all relevant medical and other evidence[] of a claimant's remaining ability to work despite his impairment." *Castle v. Colvin*, 557 F. App'x 849, 852 (11th Cir. 2014). An RFC can be determined "even without a physician's assessment" in cases where the medical evidence shows "relatively little physical impairment." *Castle*, 557 F. App'x at 854. The lack of an RFC determination from a physician or other medical source does not require reversal. *See, e.g., Langley v. Astrue*, 777 F. Supp. 2d 1250, 1253 (N.D. Ala. 2011). In this case, as in

*Langley*, there is no evidence from any of the doctors that suggest that the claimant did not have the physical capacity to perform light work. To the contrary, his treating doctors had released him to work at the more demanding work of driving a truck. The ALJ's determination of the RFC was both within the province of the ALJ and was supported by substantial evidence.

### 4.   The ALJ's Evaluation of Tremors as Non-Severe

The plaintiff's final argument relating to the ALJ's decision is that he erred in failing to consider the plaintiff's tremors/spasticity as a severe impairment.   As was discussed above, the spasticity was never diagnosed.   The only medical testimony that suggests that the condition might be severe is Dr. Poczatek's equivocal statement that the spasticity "would" concern him that the plaintiff "might not be safe" to work, even though Dr. Poczatek never imposed any limitation on his ability to work.   There was no testimony that the tremors significantly affected Mr. Wilkerson's ability to perform work-related activities, as required by 20 C.F.R. §§ 404.1520(c), 404.1521(a).   In addition, the single statement made in deposition must be viewed in the light of the objective medical findings.   None of the "medically acceptable clinical and laboratory diagnostic techniques" showed any "anatomical, physiological, or psychological abnormality" that caused the tremors,

as required by 20 C.F.R. § 404.1508.    Nothing in the medical records revealed the cause of the tremors, and the fact that none of the doctors, including Dr. Poczatek, ever imposed any limitations on the plaintiff's ability to work due to the tremors, indicates that the condition was properly evaluated as non-severe.

Even if the condition was erroneously assessed as non-severe, however, that error was harmless, because the ALJ found at the second step of the sequential analysis that Mr. Wilkerson had severe impairments, so that the ALJ then considered his entire medical condition, included both severe and non-severe impairments. *See, e.g., Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901 (11th Cir. 2011).   The Eleventh Circuit Court of Appeals has stated:

> Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.   Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination.   *See id.; Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (explaining that the ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments").   Here, that the ALJ did consider all of [claimant's] impairments (whether severe or not) in combination is clear.   The ALJ discussed in detail [claimant's] testimony and medical history, which included [claimant's] pain complaints, his limitations due to pain, and the diagnoses he received related to his pain.   *See Jones v. HHS*, 941 F.2d 1529, 1533 (11th Cir. 1991)(a simple expression of the ALJ's consideration of the combination of impairments constitutes a sufficient statement of such findings).

*Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).

The same is true in this case. Because the ALJ found that Mr. Wilkerson had some severe impairments, and because he evaluated the plaintiff's medical condition as a whole, Mr. Wilkerson is not entitled to any relief on this claim.

### B. Appeals Council

The plaintiff asserts that the Appeals Council improperly failed to consider the medical records that were submitted after the date of the ALJ's decision. The plaintiff argues that the Appeals Council failed to consider these submissions solely because of the dates of the treatments, without considering whether the records were chronologically relevant. (Doc. 14, pp. 21-30). This argument is based, primarily if not exclusively, on the fact that the Appeals Council, in its Notice to Mr. Wilkerson, stated that the council noted that the medical records that were submitted from Dr. Michael Kendrick, the Gadsden Regional Medical Center, and Southside Pain Specialists, all were dated after the July 11, 2014, ALJ's decision.[6] (Tr. at 2). Plaintiff's counsel argues that the Appeals Council refused to consider the new

---

[6] The plaintiff acknowledges that other medical records submitted to the Appeals Council after the ALJ's decision, in fact, were in the record at the time of the decision.

records solely because they post-dated the ALJ's decision. The Eleventh Circuit

Court of Appeals has described the method by which additional evidence may be

submitted during the appeal of an ALJ's denial of benefits:

> "With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r of Soc., Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. § 416.1470(b). But the Appeals Council "must consider new, material, and chronologically relevant evidence" that the claimant submits. *Ingram*, 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b).
>
> "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is ... subject to judicial review...." *Keeton v. Dep't of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994). The standard that federal courts apply when reviewing the Appeals Council's refusal to consider additional evidence submitted by the claimant is a question of first impression in this circuit. But our sister circuits have recognized that, under the regulations, whether evidence meets the new, material, and chronologically relevant standard "is a question of law subject to our de novo review." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003); *accord Farrell v. Astrue*, 692 F.3d 767, 770–71 (7th Cir. 2012); *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000). We agree that when the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate. *See Farrell*, 692 F.3d at 771–72; *Threet*, 353 F.3d at 1191–92; *Bergmann*, 207 F.3d at 1071.5

*Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320–21 (11th Cir. 2015).

Whether the evidence presented is "chronologically relevant" depends upon whether the records "relate back to the period before the ALJ's decision." *Washington*, 806 F.3d at 1322. Records relate back if they reflect that, in reaching his post-decision opinion, the doctor reviewed records from the claimant's treatment that came before the ALJ's decision and if those records demonstrate that the condition or symptoms were more severe than the ALJ determined. Where the ALJ considered "similar evidence" of the condition being treated, and there is no detail about the nature or severity of the past history of the condition in the new records, the records do not relate back. *See Stone v. Soc. Sec. Admin.*, 658 F. App'x 551, 553 (11th Cir. 2016); *see also Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 864 (11th Cir. 2017). The records are not deemed chronologically relevant simply because they reveal that the plaintiff's symptoms worsened after the ALJ's decision. *Stone*, 658 F. App'x at 554.

The Appeals Council properly found that the records from Dr. Kendrick, the Gadsden Regional Medical Center, and Southside Pain Specialists were not chronologically relevant. None of the records reveals that the treating physicians examined or based their opinions on the plaintiff's treatment history pre-dating the ALJ's decision. While they documented the plaintiff's condition in later 2014 and

during 2015, there is nothing in them that allows the inference that they shed light on his condition prior to the ALJ's decision. While all of the records document the plaintiff's back and neck pain at the time of the respective examinations, they do not explore whether, at an earlier time, the pain was better or worst or more limiting in a way that might have impacted the ALJ's assessment.

Even assuming *arguendo* that the Appeals Council improperly failed to consider the records that Mr. Wilkerson submitted reflecting treatment after the ALJ's decision, the omission is error only if they records create a "reasonable possibility that the statement in the [records submitted on appeal] would have changed the result of the proceedings." *Stone*, 658 F. App'x at 553. In this case, Mr. Wilkerson's records showed continued pain from the same spinal issues that the ALJ considered severe. Even when being treated in 2014 and 2015, Mr. Wilkerson frequently reported that his pain rated a 4 or 5 on a scale of 1 to 10, and he never indicated that his pain on the date of his treatment rated higher than an 8. (Doc. 14, pp. 21-23). The records, even if they were chronologically relevant, do not compel the conclusion that the ALJ's decision would have been different had those records been considered.[7]

---

[7] The plaintiff submitted supplemental authority on November 9, 2017, to call to the

In sum, the records that the Appeals Council found not to be chronologically relevant were about the plaintiff's condition at a time after the ALJ's decision and showed that his condition was worsening over time. Even considering those records, the ALJ's decision was supported by substantial evidence that the plaintiff was not disabled during the relevant time period. Accordingly, the Appeals Council properly denied review because the ALJ's decision was supported by substantial evidence and comports with the statutes and regulations. Therefore, the plaintiff's claim that the Appeals Council improperly denied review is unfounded.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Wilkerson's arguments, the court concludes that the ALJ's determination is supported by substantial evidence and was both comprehensive and consistent with the applicable SSA rulings. The court further concludes that the Appeals Council

court's attention an unpublished October 2017 decision in which the Eleventh Circuit Court of Appeals reversed and remanded a denial of benefits where the Appeals Council had refused to consider treatment records dated after the ALJ decision. (Doc. 19)(citing and attaching *Hunter v. Soc. Sec. Admin.*, No. 17-11557, 2017 U.S. App. LEXIS 20102). This court finds the opinion inapposite, because *Hunter* was based on records that post-dated the ALJ decision but that specifically noted that the plaintiff's limitations "existed back to July 2008," her alleged onset date. *Id.* at *9. This clearly made the records at issue in *Hunter* chronologically relevant to her claim. Plaintiff in this case has not set forth any basis for a finding that any of the records at issue here involved a specific statement regarding the plaintiff's limitations prior to the ALJ decision, or even that the medical records were based upon a review of the records that related to his condition dating back to the alleged onset date.

properly considered the plaintiff's medical records. The objective medical and other evidence supports the ALJ's conclusion that plaintiff's conditions did not cause disabling limitations and instead shows that he could perform light work.

Accordingly, the Commissioner's decision is due to be and hereby is AFFIRMED and the action is DISMISSED WITH PREJUDICE.

DATED the 16th day of March, 2018.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE